## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT COURT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **USA FRANCHISE CORPORATION** ) | CASE NO. |
| ) | |
| 17700 St. Clair Avenue ) | JUDGE |
| Cleveland, Ohio 44110 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| **COMPANY SERVICES LLC** ) | |
| ) | |
| C/o Courtney Kathleen Turner, Statutory Agent ) | |
| 2570 Barrett Place Drive ) | |
| Ballwin, Missouri 63021 ) | |
| ) | |
| Also serve: ) | |
| ) | |
| Douglas Graham, Manager/Director ) | |
| 829 Hanley Industrial Ct. ) | |
| Brentwood, Missouri 63144 ) | |
| ) | |
| and ) | |
| ) | |
| **DOUGLAS GRAHAM** ) | |
| ) | |
| 1463 Fawnvalley Drive ) | |
| St. Louis, Missouri 63131 ) | |
| ) | |
| Defendants. ) | |

---

## VERIFIED COMPLAINT

USA Franchise Corporation hereby verifies, alleges and states as follows:

### THE PARTIES

1.      USA Franchise Corporation ("*USA*") is an Ohio corporation with a principal

place of business located at 1770 St. Clair Avenue, Cleveland, Ohio.  USA is the owner and

franchisor of the USA INSULATION franchise system and, as of December 31, 2015, USA had

at least 29 franchisees operating in 13 states.

2.     Defendant Company Services LLC ("*Defendant*") is a Missouri limited liability company with a principal place of business located at 829 Hanley Industrial Ct., Brentwood, Missouri.  As set forth herein, Defendant is a former franchisee of the USA INSULATION system.

3.     Defendant Douglas Graham ("*Graham*") is an individual with a principal place of residence located at 1463 Fawnvalley Drive, St. Louis, Missouri.  Graham is the Manager of Defendant (for purposes of this Complaint, Graham and the Defendant are collectively referred to herein as the "*Defendants*").

4.     This Court has federal question jurisdiction over this matter under 28 U.S.C. §§ 1331, 1338 and the Lanham Act, 15 U.S.C. § 1125.

5.     This Court has supplemental jurisdiction over USA's state law claims under 28 U.S.C. § 1367.

6.     This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332, as the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

7.     Venue is proper in this jurisdictional district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Northern District Court of Ohio.  Moreover, in the relevant documents more fully described herein, Defendants contractually agreed that any action to interpret and/or enforce the relevant agreements between the parties "shall be commenced and litigated to conclusion only in a court of competent jurisdiction venued within the County of Cuyahoga, State of Ohio."  Ex. 1 at Sec. XXII(A) (USA_00040).

## FACTS COMMON TO ALL COUNTS

**A.**    **The USA INSULATION Franchise System.**

8.    USA is the franchisor and owner of a franchise system relating to the establishment, development and operation of a business that provides proprietary insulation products and related insulation services to customer's existing homes (each, a "*USA INSULATION Business*").

9.    USA prides itself on the high quality products and services that it, and its franchisees, offers their customers.  USA enjoys an excellent reputation and goodwill throughout the United States with respect to providing quality products and services to its customers.  USA's reputation and goodwill have, and continue to be, an important part of USA's business value and provide important benefits to USA and its franchisees.

10.    USA's franchise system is identified by a number of proprietary marks, including the following primary marks (collectively, the "*Proprietary Marks*"): (i) "USA INSULATION," which is registered on the Principal Register of the United States Patent and Trademark Office (the "*USPTO*") at Registration No. 3495517 (the "*Tradename Mark*"); (ii) "USA INSULATION COMFORT. SAVINGS, ENERGY EFFICIENCY.", which is registered on the Principal Register of the USPTO at Registration No. 3708154; and (iii) "USA INSULATION COMFORT. SAVINGS. ENERGY EFFICIENCY. (and design)", which is registered on the Principal Register of the USPTO at Registration No. 3708155 (Registration Nos. 3708154 and 3708155 are collectively referred to herein as the "*Tagline Marks*").

11.    USA franchisees also utilize USA's proprietary business system comprised of, among other things: (i) proprietary training and assistance; (ii) standards and procedures for efficient business operations; and (iii) specifications for product sourcing (the "*System*").

3

12.     USA grants third parties the right to operate a USA INSULATION Business within a defined geographical area pursuant to the terms and conditions of a franchise agreement that is entered into between USA and such third parties for each Franchised Business (a "Franchise Agreement").

**B.     Franchise Agreement Between USA and Defendant.**

13.     On March 25, 2015, USA entered into a "Franchise Agreement" with Defendant, a true and accurate copy of which is attached hereto as Exhibit 1[1] (the "***Agreement***").

14.     Pursuant to the Agreement, Defendant was granted "the right, license and privilege…to operate a USA Insulation Business" (the "***Franchised Business***") Ex. 1 at Sec. I(A) (USA_00004).

15.     Pursuant to the Agreement, Defendant was granted the right to operate the Franchised Business within a "Protected Territory" comprised of certain zip codes in the southern revision of the State of Missouri (the "***Protected Territory***"). For so long as Defendant was in compliance with the terms of the Franchise Agreement, USA agreed that it would not open or operate, or license any third party the right to open or operate, another USA INSULATION Business within the Protected Territory. *Id.* at Sec. I(B) (USA_00004) and Schedule E, Attachment 1 (USA_000065).

16.     The term of the Agreement was for a period of ten (10) years and Defendant was granted the option to renew said Agreement, subject to certain terms and conditions. *Id.* at Sec. II(A)-(B) (USA_00005).

17.     USA fully performed, and otherwise complied with, its obligations under the Agreement. See *Id.* at Sec. III (USA_00007).  Specifically, among performing its various other

---

[1] A Bates label has been added to the Agreement for the purpose of reference and citation.  With exception of said Bates label, the Agreement attached hereto is a true and accurate copy of the Agreement executed by Defendants.

obligations, USA provided its proprietary "Initial Training Program" and subsequent assistance to Defendant's management, including Graham,  wherein USA provided information and training relating to the System, proprietary insulation products (the "***USA Insulation Products***") and methodology, all of which constitute trade secrets and are otherwise confidential, proprietary and competitively sensitive information.

18.     Prior to receiving this initial training, neither Defendant nor Graham had any prior experience regarding the offer and provision of insulation installation services.

19.     Defendants used the telephone number (314-961-5400) (the "***Telephone Number***") and Franchisor provided or otherwise approved various advertising and other promotional materials wherein the Telephone Numbers were displayed alongside the Proprietary Marks and the mark USA INSULATION.

20.     As set forth herein, Defendant has breached, and otherwise failed to perform its obligations under the Agreement.

i.     <u>The Graham Guaranty</u>.

21.     In connection with the Agreement, Defendant Graham executed a certain "GUARANTY AND ASSUMPTION OF OBLIGATIONS" agreement (the "***Guaranty***").  A true and accurate copy of the Guaranty is attached to the Agreement (Ex. 1) as "Schedule B" (USA_000054).

22.     Pursuant to the Guaranty, Graham – in his personal and individual capacity -- agreed to "personally and unconditionally guarantee to Franchisor and its successors and assigns, for the term of the Agreement and thereafter as provided in the Agreement, that [Defendant] Company Services LLC, shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement." *Id.*

23.     Pursuant to the Guaranty, Graham – in his personal and individual capacity – further agreed "to be personally bound by, and personally liable in connection with, all obligations of the Franchisee under the Agreement…." *Id.*

ii.     Defendant's Obligations Under the Agreement.

24.     In the Agreement, Defendant assumed certain duties and obligations, including the payment of an initial franchise fee and the obligation to pay USA a weekly "Royalty" amounting to five percent (5%) of the gross sales of the Franchised Business from the immediately preceding week.

25.     The Agreement imposed various obligations upon Defendant regarding the accounting, reporting and record keeping of Defendant's gross sales, Royalty calculations and other of Defendant's payment/financial obligations under the Agreement. *Id.* at Sec. IX (USA_000020-21).

26.     The Agreement also obligated Defendant to, *inter alia*: (i) obtain at least three (3) telephone numbers solely dedicated to the "Franchised Business," and (ii) to pay when due all continuing weekly royalty fees, all advertising contribution fees and any and all other fees or payments to USA. *Id.* at Sec. V(L)(5) and (9) (USA_000014-15).

27.     In the Agreement, Defendant acknowledged receipt of "Confidential Information" from USA – including USA's "Trade Secrets," information provided during training and/or in USA's "Manual" – and further agreed not to disclose USA's Confidential Information. *Id.* at Sec. VIII(A)-(C) (USA_000018-19).

28.     Pursuant to the terms of the Agreement, Defendant agreed– during the term of the Agreement and for a period of two (2) years thereafter – not to "directly or indirectly, for itself or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain,

operate, engage in, be employed by, or have any interest in any Competitive Business" within sixty (60) miles of the Protected Territory or any other "Protected Territory" granted by USA at the time of termination. *Id.* at Sec. XV(A)-(C) (USA_000035-36).

29.     The Agreement defines the term "Competitive Business" as "any insulation service business which is similar to the Franchised Business or that feature, offer, and/or sell products and services similar to those offered and sold by the Franchised Business and/or other USA Insulation franchises." *Id.* at Sec. VIII(E) (USA_000019).

30.     In addition to non-competition, Defendant further agreed– during the term of the Agreement and for a period of two (2) years thereafter – not to solicit business from Defendant's former customers and/or USA's suppliers or vendors. *Id.* at Sec. XV(C) (USA_000036).

iii.     Default and Termination Under the Agreement.

31.     The Agreement identifies various specific events of default that could give rise to an automatic termination of the Agreement including, without limitation: (a) the "abandonment" of the Franchised Business; and (b) Defendant's breach of the non-competition/non-solicitation provisions set forth in the Agreement. *Id.* at Sec. XIII(A)(9) and (10) (USA_000032).

32.     The Agreement also identifies various specific events of default that could give rise to a termination of the Agreement if the alleged default it not cured within thirty (30) days after notice including, without limitation: (a) Defendant maintains false or inaccurate books and records; and (b) Defendant fails to promptly pay monies owed to USA. *Id.* at Sec. XIII(B)(6) and (10) (USA_000033).

33.     The Agreement provides that, "upon termination or expiration of the Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and Franchisee shall immediately cease to operate the Franchised Business under the Agreement and [shall] comply

with all non-competition provisions set forth in Section XV." *Id.* at Sec. XIV(A) (USA_000034).

34.    Additionally, upon termination or expiration of the Agreement, Defendant is required to, *inter alia*: (a) immediately cease use of USA's confidential methods; (b) cancel any assumed name or equivalent registration which contains Proprietary Marks; (c) pay all sums owed to USA and/or its affiliates; (d) return, at Defendant's expense, USA's proprietary products and documents – including manuals, advertising and materials; and (d) take any and all steps necessary to assign Defendant's right, title and interest in the Telephone Number and any other telephone numbers, domain names and email addresses associated with the Franchised Business. *Id.* at Sec. XIV(A)-(C), (E), (F) and (H) (USA_000034-35).

    iv.    <u>The Non-Disclosure and Non-Competition Agreement</u>.

35.    In addition to the Defendant's obligations set forth in the Agreement, both Defendant and Graham – acting in his personal and individual capacity – entered into a certain "NONDISCLOSURE AND NON-COMPETITION AGREEMENT" (the "*NDA*").  A true and accurate copy of the NDA is attached to the Agreement (Ex. 1) as "Schedule C" (USA_000056-59).

36.    Pursuant to the NDA, Graham agreed not to, *inter alia*, communicate or divulge USA's "Trade Secrets" and/or "Confidential Information"  Ex. 1, Schedule C at Sec. 2(a)-(b). (USA_000056).

37.    The NDA defines the term "Confidential Information" as including, without limitation, USA's trade secrets and/or information identified as "Confidential" when delivered by USA.  *Id.* at Sec. 2(d) (USA_000057).

8

38.     The NDA further prohibited Graham from – during the term of his employment with Defendant and for a period of two (2) years thereafter – "directly or indirectly, carry on, be engaged in or take part in, render services to, or own or share in the earnings of any Competitive Business…." *Id.* at Sec. 3(a)-(b). (USA_000057).

39.     Specifically, the NDA prohibited Graham from – during the term of his employment with Defendant and for a period of two (2) years thereafter - engaging in "Competitive Business" within sixty (60) miles of the Protected Territory or any other Protected Territory granted by USA at the time of termination. *Id.* at Sec. 3(b).

40.     The NDA defines the term "Competitive Business" as "any business that offers or provides (or grants or licenses to others to operate a business that offers) insulation or related services and products the same as or similar to those provided by USA Insulation Franchises or in which Trade Secrets or other Confidential Information could be used to the disadvantage of Company or its other franchisees…." *Id.* at Sec. 3(d) (USA_000057-58).

41.     Pursuant to the NDA, USA is an express third party beneficiary of the agreement, "with independent right to enforce its terms." *Id.* at Sec. 4(h).

42.     The NDA provides that Graham shall be liable for all costs and expenses incurred in connection with the enforcement of the NDA. *Id.* at Sec. 4(e).

**B.     <u>Defendants' Breach of the Agreement and USA's Notice of Default.</u>**

43.     In early 2016, USA discovered that Defendant had underreported its 2015 gross sales in violation of the Agreement.

44.     USA representatives contacted Graham to discuss the problem and requested that he reconcile or otherwise correct the issue; however, he failed to do so.

45.     Accordingly, on February 19, 2016, USA – acting by and through counsel – sent a letter to Defendants advising that the conduct represented "a material violation of Sections IX(B) and IX(C) of the Franchise Agreement" and formally demanded that Defendants cure said violation within thirty days.  A true and accurate copy of USA's February 19, 2016 Demand Letter (the "*First Demand*") is attached hereto as Exhibit 2.

46.     The First Demand advised that if Defendants failed to comply with the demand within the prescribed period, "USA Insulation intends to exercise its right to terminate your Franchise Agreement pursuant to Section XIII(B)(10)…." *Id.*

47.     In early June 2016, USA discovered that Defendant had again underreported its monthly sales – this time for May 2016.

48.     Before USA could send a formal default letter, however, on June 8, 2016, Defendant contacted USA and advised that it would be unable to electronically transfer its required Royalty and Fund Contribution owed in June 2016 (based upon May operations) stating that such funds were not available in Defendant's designated bank account for the Franchised Business.

49.     On June 20, 2016, Defendant again contacted USA, this time to advise that it intended to cease operation of the Franchised Business and that Graham intended to sell Defendant's assets, including the "Approved Vehicle" and outfitted and equipped in accordance with the System and certain other equipment.

**C.      The Notice of Termination**

50.     On July 6, 2016, USA – acting by and through counsel – sent a letter detailing the prior communications between USA and Defendants and providing Defendants with a "Notice of

Termination" of the Agreement.  A true and accurate copy of the USA's July 6, 2016

Termination Notice (the "*Termination Notice*") is attached hereto as Exhibit 3.

51.     The Termination Notice noted that Defendants had refused to sign a "Proposed

Termination Agreement" provided by USA and advised that USA had "no choice but to

terminate your Franchise Agreement effectively immediately" in accordance with Section

XIII(A)(9) of the Agreement.  Ex. 3.

52.     The Termination Notice identified various "Post-Termination Obligations" that

were required under the express terms of the Agreement including, without limitation:

(a)     De-identify the former Franchised Business, any vehicle used in connection with
the Franchised Business and the Premises of all Proprietary Marks and provide USA with
photographic evidence demonstrating de-identification;

(b)     Return any and all documents and materials that constituted confidential and/or
proprietary information of USA including customer information and contracts, manuals
and training/instructional materials; and

(c)     Cancel all assumed/trade name registrations involving Proprietary Marks, use of
the Telephone Number and all phone numbers and domain names used in connection
with the Franchised Business or the Proprietary Marks.

*Id.*

53.     The Termination Notice further reminded Defendants of their obligations to

comply with the confidentiality, non-competition and other restrictive covenants set forth in the

Agreement and NDA.  *Id.*

54.     The Termination Notice also advised Defendants that they had until July 15, 2016

to comply with the requests, instructions and demands set forth therein.  *Id.*

**D.     Discovery of Defendants' Competing Business; Defendants' Response.**

55.     In late July 2016, USA learned that Defendants  had failed to comply with the

requests, instructions and demands set forth in the Termination Notice and, instead, Defendants

11

had established and commenced operation of a "Competitive Business," identified as "THE INSULATION SOLUTION" (the "*Competing Business*").

56.     According to the records of the Missouri Secretary of State, and unbeknownst to USA at the time, Defendant registered the "The Insulation Solution.com" as a "fictitious name" on June 23, 2016 – only three days after Defendants' had advised USA that they intended to cease business operation and liquidate Defendant's assets.  A true and accurate copy of said records are attached hereto as Exhibit 4 at "B".

57.     The Competing Business was/is being operated out of the exact same location of the Franchised Business – 829 Hanley Industrial Court, St. Louis, Missouri – and was/is using the exact same Telephone Number that had been used by the Franchised Business (314-961-5400).

58.     On August 16, 2016, USA – by and through counsel – sent a third letter to Defendants advising of Defendants' breaches of covenants against competition and demanding that Defendants immediately comply with their post-termination obligations set forth in the Agreement.  A true and accurate copy of USA's August 16, 2016 Demand Letter (the "*Second Demand*") is attached hereto as Exhibit 4.

59.     Enclosed with the Second Demand were copies of Graham's LinkedIn profile, which identified his as the "Director" of the Competing Business since June 2016.  Ex. 4 at "A".

60.     Additionally, the Second Demand enclosed copies of the website of the Competing Business, which demonstrated that: (a) the Competing Business was offering products and performing services that are substantially similar (if not identical) to the products and services that had been provided in connection with the Franchised Business; (b) the Competing Business was using the same telephone number that had been used in connection

12

with the Franchised Business; (c) the Competing Business was misappropriating and  improperly using the Tagline Marks ("COMFORT. SAVINGS. ENERGY EFFICIENCY) in a manner that constituted infringement of USA's Proprietary marks; and (d) the website of the Competing Business contained large blocks of content that were substantially similar (if not identical) to content located on USA's website. *Id.* at "C".

61.     The Second Demand also demanded that Defendants take specific steps to cure the various defaults identified therein, instructed Defendants do so on or before August 15, 2016 and advised that USA intended to take legal action in the event that Defendants failed to comply.

62.     On August 16, 2016, Defendants – by and through Graham – sent an e-mail to USA's counsel in response to the Second Demand.  A true and accurate copy of that email (the "***Graham Response***") is attached hereto as Exhibit 5.

63.     In the Graham Response, he advised that "the current building location is under a listing agreement with a local Broker" and that "[t]here is no intent to retain this location any longer than necessary." Ex. 5.

64.     In the Graham Response, Graham further advised that he had "immediately forwarded the [Second Demand] to the web site producer to have any similar material on website to be removed." *Id.*

65.     Graham further advised that he would "return any proprietary manuals as soon as they are retrieved from storage" and that the "fictitious name" filing associated with the Competing Business had been cancelled. *Id.*

66.     Notably, however, the Graham Response did not dispute that the Competing Business was providing products and performing services that were the same as those provided

by the Franchised Business and did not advise that the Competing Business would refrain from engaging in any such activities.

**E.     Defendants' Continuation of the Competing Business.**

67.     Although Defendants did comply with certain limited requests set forth in the Second Demand, including providing photographic evidence of removal of USA's "wrapping" (advertising) from Defendant's vehicle and removing the Tagline Marks from the website of the Competing Business, Defendants continue operating the Competing Business in breach of the restrictive covenants set forth in the Franchise Agreement.

68.     True and accurate screen shots from the current version of the Competing Business website (http://theinsulationsolution.com/) are attached hereto as Exhibit 6.  Said website identifies the "Products/Services" of the Competing Business as being "Spray Foam Insulation," "Blown-In Attic Insulation," "Band Joists Insulation," "Whole House Insulation," "Crawl Space Insulation," "Air Sealing," and "Wall Insulation." *Id.*

69.     The Competing Business is a "Competitive Business" as that term is defined by the Agreement.  Ex. 1 at Sec. VIII(E) (USA_000019).

70.     The Competing Business is a "Competitive Business" as that term is defined by the NDA.  *Id.*, Schedule C at Sec. 3(d) (USA_000057-58).

71.     Additionally, the website of the Competing Business is promoting the Better Business Bureau accreditation that was obtained by and used in connection with the Franchised Business and specifically references the "Alternative Business Name" of the Competing Business as being "USA Insulation of St. Louis."  See BBB "Business Review" of the

Competing Business,[2] a true and accurate copy of which is attached hereto as <u>Exhibit 7</u> (claiming accreditation "since 3/3/15").

72.     On August 16, 2016 – less than one day after the Graham Response – USA requested that an independent person residing in the greater St. Louis area (the "***Resident***") contact the Competing Business in an effort to determine whether the Competing Business was in business and to determine the nature of said business.

73.     The Resident called the number identified on the website of the Competing Business (314-961-5400), which USA notes is the same phone number that was used in connection with the Franchised Business.  <u>See</u> Resident's Affidavit, attached hereto as <u>Exhibit 8</u> (the "***Affidavit***") at ¶2.

74.     The call was answered by an answering service that took the Resident's contact information and advised that a representative of the Competing Business would contact her the following day.  Ex. 8 at ¶3.

75.     The Resident completed the form on the website of the Competing Business for persons interested in obtaining a "Quote."  *Id.* at ¶4.

76.     The following day, on August 17, 2016, the Resident received multiple calls in response to her contact with the Competing Business.  Ultimately she spoke with representatives of the Competing Business who identified themselves as "Sara" and "Beth."  *Id.* at ¶¶5-6.

77.     The representatives of the Competing Company advised that they provided products and services relating to the installation of foam insulation and "duct sealing."  *Id.* ¶6.

---

[2] <u>See</u> http://www.bbb.org/stlouis/business-reviews/contractor-insulation/the-insulation-solution-com-in-brentwood-mo-310590222/customer-reviews

78. The products and services offered by the Competing Company during the call with the Resident are identical to the products and services that were offered by the Franchised Business.

79. During the call, representatives of the Competing Company encouraged the Resident to make an appointment with the Competing Company to meet at her residence and provide her with an estimate. *Id.* at ¶7

80. As such, there can be no question that Defendants are a "Competitive Business" as defined by the Agreement and the NDA and that Defendants are actively utilizing the Competing Business to engage in conduct that constitutes a breach of the Agreement and the NDA.

## COUNT ONE

### (Breach of Contract – The Agreement, the NDA and the Guaranty)

81. USA hereby re-states and re-alleges each and every preceding Paragraph of this Verified Complaint, which are hereby incorporated by reference herein.

82. The Agreement, including the Guaranty and the NDA, is a valid, binding and enforceable contract between USA and Defendants.

83. At all times relevant, USA fully performed its obligations under the Agreement.

84. Defendants have failed to perform their respective obligations under the Agreement and have engaged, and continue to engage, in conduct that constitutes a violation and breach of the Agreement.

85. Defendants have operated the Competing Business, which operates at the same location of the Franchised Business and utilizes the same phone number that was used in connection with the Franchised Business, in violation and breach of the Agreement.

16

86.     Defendants have not returned to USA all Confidential Information, such as manuals and other written materials describing information about the System, insulation methods and advertising materials, in violation and breach of the Agreement.

87.     Defendants have not paid the full amount due to USA under the Agreement including, without limitation, Royalty and Fund Contributions, in violation and breach of the Agreement.

88.     Defendants have not transferred or cancelled the Telephone Number and any other the telephone number(s) associated with the Franchised Business, in violation and breach of the Agreement.

89.     USA is entitled to an injunction enforcing USA's material rights under the Agreement including the non-competition covenants set forth therein.

90.     Defendants' conduct, with respect to the operation of the Competing Business and otherwise, has caused and, unless enjoined, will continue to cause serious and irreparable harm to USA for which it has no adequate remedy at law.

91.     As a direct and proximate cause of Defendants' conduct, USA has incurred damages and, unless enjoined by this Court, will continue to incur damages in an amount to be proven at trial but believed to be in excess of $75,000.

92.     USA is entitled from Defendants the amounts due and owing under the Agreement and the Guaranty, plus appropriate interest.

93.     USA is entitled to specific performance of Defendants' obligations under the Agreement, the Guaranty and the NDA.

94.     USA is entitled to recover damages it has suffered as a direct and proximate result of Defendants' breach of their obligations under the Agreement including, without limitation,

operation of the Competing Business and the infringement upon USA's trademarks and service mark in an amount to be determined at trial, but believed to be in excess of $75,000.

95.    Pursuant to the Guaranty, Graham is jointly and severally liable for any and all damages incurred by USA as a result of Defendant's breach of the Agreement.

96.    Pursuant to the NDA, Graham is obligated to pay USA's costs and expenses, including reasonable attorneys' fees, incurred by USA in relation to this action.

97.    USA is entitled to recover such other damages and further relief as this Court deems just and proper.

## COUNT TWO

### (Trademark Infringement Under 15 U.S.C. § 1114, *et seq.*)

98.    USA hereby re-states and re-alleges each and every preceding Paragraph of this Verified Complaint, which are hereby incorporated by reference herein.

99.    USA has registered the Proprietary Marks on the Principal Register of the USPTO as described more fully above in this Complaint.  A true and accurate copy of the registration for the Tradename Mark is attached hereto as Exhibit 9, true and accurate copies of the Tagline Marks are attached hereto as Exhibit 10.

100.    Defendants have used in commerce, without USA's consent, USA's Proprietary Marks  and/or names substantially similar thereto in connection with the advertising and operation of the Competing Business.

101.    Defendants have used in commerce, without USA's consent, the Tradename Mark and/or names substantially similar thereto in connection with the advertising and operation of the Competing Business.

18

102.   Defendants have used in commerce, without USA's consent, the Tagline Mark and/or language substantially similar thereto in connection with the advertising and operation of the Competing Business.

103.   Defendants' conduct is likely to cause confusion, to cause mistake and/or to deceive.

104.   Defendants' conduct has been willful and with knowledge of the unauthorized use of USA's Proprietary Marks including, without limitation, the Tradename Mark and the Tagline Marks.

105.   The actions of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114. Defendants' actions have caused and, unless enjoined by this Court in accordance with 15 U.S.C. § 1116, will continue to cause serious and irreparable injury to USA and USA's reputation and good will, for which USA has no adequate remedy at law.

106.   Defendants' conduct has also caused damage to USA for which USA should be compensated by Defendants.

## COUNT THREE

### (Unfair Competition under 15 U.S.C. § 1125(a))

107.   USA hereby re-states and re-alleges each and every preceding Paragraph of this Verified Complaint, which are hereby incorporated by reference herein.

108.   Defendants have, without USA's consent and in connection with the operation of the Competing Business, used in commerce, a word, name, symbol, device, or any combination thereof, namely USA's Proprietary Marks and the Telephone Number previously utilized in connection with the Franchised Business, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection and/or association of Defendants with USA.

109.    Defendants' conduct has been willful and with knowledge of the unauthorized use of USA's marks and the phone number previously used in connection with the Franchised Business.

110.    Defendants' actions constitute unfair competition in violation of 15 U.S.C. §1125(a), have caused, and unless enjoined by this Court, will continue to cause serious and irreparable injury to USA for which it has not adequate remedy at law.

**WHEREFORE**, USA respectfully requests that this Court:

1.    Issue a temporary restraining order, a preliminary injunction and a permanent injunction against Defendants and anyone acting on their behalf or in concern with them that:

(A)    enjoins and restrains Defendants from engaging any "Competitive Business," as that term is defined by the Agreement and the NDA, at 829 Hanley Industrial Ct., Bentwood, Missouri or anywhere else within a 60-mile radius of the "Protected Territory" or any other "Protected Territory" granted by USA at the time of termination, as that term is defined by the Agreement;

(B)    enjoins and restrains Defendants from: (a) soliciting business from customers of the Franchised Business; (b) contacting any of USA's suppliers or vendors for any competitive purpose; and/or (c) soliciting any of USA's employees, or the employees of USA's affiliates or any other System franchisee to discontinue employment;

(C)    enjoins and restrains Defendants from using any and all telephone numbers previously used by or otherwise associated with the Franchise Business including, without limitation, 314-961-5400, as well as any and all advertisements, publications, listings and/or materials that reference or otherwise incorporate the Telephone Number or any other number associated with the former Franchised Business.  Defendants are further ordered to immediately transfer any and all telephone numbers previously used by or otherwise associated with the Franchised Business to USA;

(D)    enjoins and restrains Defendants from using USA confidential and proprietary trademarks, service marks and trade secrets in connection with the Competing Business or otherwise including, without limitation, the Tradename Mark, Tagline Marks, components of USA's Proprietary Marks generally and any content from USA's website;

(E) enjoins and restrains Defendants from using any of USA's Proprietary Insulation Products for any reason whatsoever, in connection with the Competing Business or otherwise;

(F) enjoins and restrains Defendants from making any reference to the Competing Business, or any other "Competitive Business," as that term is defined in the Agreement, operating within a 60-mile radius of the Protective Territory from any of their personal and professional social media profiles and/or accounts including, without limitation, LinkedIn; and

(G) temporarily enjoins and restrains Defendants from holding themselves out as a present or former USA business franchisee or otherwise using consumer reviews and/or ratings that concern, relate to, or otherwise reference products and/or services that were provided in connection with the Franchised Business including, without limitation, Better Business Bureau ratings and/or reviews.

2. Issue a specific performance order against Defendants and anyone acting in concert or participation with them:

(A) requiring immediate return of all documents and materials (whether tangible or in electronic form) that constitute confidential or proprietary information of USA including, without limitation, (i) all information and contracts related to any customer that was solicited or serviced by the Franchised Business in any manner; (ii) any and all manuals and other training/instructional materials that USA provided or loaned to Defendants at any time;

(B) requiring immediate delivery to USA of all advertising materials provided by USA or otherwise referencing the USA marks, or any component thereof, including, without limitation, the Tradename Mark and/or the Tagline Marks; and

(C) requiring immediate transfer to USA of any and all telephone numbers used by or otherwise associated with the Franchised Business, and payment of all past due telephone charges as well as any and all costs related to transferring said numbers.

3. Award USA damages directly and proximately caused by Defendants' breach of contract, trademark infringement and unfair competition including, without limitation, the payment of all amounts due and owing under the Agreement.

4. Award USA its costs and expenses incurred in connection with this action including, without limitation, its reasonable attorneys' fees.

5.    Award USA such other and further relief as this Court deems just, proper and/or appropriate.

Respectfully submitted,

**BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC**

/s/  Gregory P. Amend
Gregory P. Amend (0081247) (Lead Counsel)
Barry Y. Freeman   (0062040)
One Cleveland Center – Suite 1700
1375 East Ninth Street
Cleveland, OH  44114
Telephone: 216.621.5300
Facsimile: 216.615.3024
Email:  gamend@bdblaw.com
          bfreeman@bdblaw.com

William R. Graefe (PA Bar No.: 203786)
**FISHER ZUCKER LLC**
21 South 21st Street
Philadelphia, Pennsylvania 19103
Telephone:  215.825.3100
Email:  bgraefe@fisherzucker.com

[MOTION FOR PRO HAC VICE TO BE
FILED/PENDING]

*Attorneys for Plaintiff USA Franchise Corporation*